# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TONI FALLON, | ) | 1: 04 CV F 6047 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) ) | |

**BACKGROUND**

Plaintiff Toni Fallon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act and her application for disability insurance benefits ("DIB") under Title II of the Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On December 22, 2004, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her applications for SSI and DIB on December 6, 1996, alleging disability since July 1, 1996, due to arthritis, fibromyalgia, carpal tunnel syndrome, depression and chronic obstructive pulmonary disease. AR 17, 42, 87-90. On October 30, 1998, an ALJ issued a decision finding that plaintiff was not disabled. AR 40-54. On May 18, 2002, the Appeals Council remanded the case back to the ALJ. AR 71. A hearing was held on October 29, 2002 in Stockton, California. AR 354-378. On May 30, 2003, the ALJ issued a decision finding plaintiff not disabled. AR 13-25. On June 3, 2004, the Appeals Council denied review. AR 5-6.

Hearing Testimony

Plaintiff personally appeared on October 29, 2002 with counsel. AR 356. Vocational expert ("VE") David Dettmer also appeared and testified. AR 356, 369-376.

Plaintiff testified that she was born February 12, 1946, and had a twelfth grade education. AR 358-359. She last worked in 1987 as a waitress/bartender. AR 360. At the time of the hearing she lived by herself and was able to care for her own needs. AR 360. Plaintiff testified that she enjoyed reading and she walked for exercise. AR 361-362. She attends church and occasionally goes out with friends. AR 362-363. She testified that she could walk for ten minutes; sit for fifteen minutes; and lift ten pounds. AR 364-365. She experiences pain around her rib cage due to her fibromyalgia but she can move her fingers without pain, feel hot and cold, pick up a gallon of milk and use a keyboard. AR 365-366. She rated her pain on a scale of one to ten as a six and stated that it "comes and goes." AR 366.

The VE testified that plaintiff's past work as a bartender and waitress were described in the Dictionary of Occupational Titles ("DOT") as light with an SVP of 3. AR 370. He testified that these jobs included skills which would be transferable sedentary work including that of a cashier. AR 370. The ALJ asked the VE to assume an individual of Plaintiff's age, education and past relevant work, who retains the residual functional capacity to sit six hours; stand six hours; walk six hours and requires normal breaks. AR 370. This person could occasionally lift

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1 and carry twenty pounds and frequently lift and carry ten pounds. AR 370. The individual could
2 occasionally climb, balance, stoop, kneel, crouch, and crawl and the individual must avoid
3 moderate exposure to chemicals, noise, humidity, dust, temperature, extremes and fumes. AR
4 370-371. The VE testified that this person could perform Plaintiff's past relevant work as a
5 waitress/bartender as she performed them and as performed in the national economy. AR 371.

Medical Evidence

In 1996, Plainitff was treated by Dan Cox, a physician's assistant, under the direction of Dr. John Payne. AR 173-177. She had back pain related to degenerative disc disease with marked disc space narrowing and a thoracic strain. Id. Plaintiff was temporarily disabled due to these conditions from May 1996 through November 1996. AR 174.

On February 3, 1997, an x-ray showed severe degenerative disc disease at the L4-5 level of the lumbosacral spine. AR 213.

Plaintiff underwent a left carpal tunnel release on February 11, 1997. AR 189. Plaintiff was diagnosed with fibromyalgia around the same time.

On February 22, 1997, Dr. P. Anderson performed an orthopedic consultative examination. AR 214-218. Plaintiff performed all activities and maneuvers during the exam, including removing her socks and shoes and lacing her boots, without difficulty. AR 216. Despite plaintiff's complaints of lumbar backache and limited standing and sitting ability, Dr. Anderson's back examination revealed a very mild reduction in range of motion, without sciatic stretch signs. AR 218. Neurologic examination was normal as it related to the lumbosacral spine, without evidence of tenderness or spasm. AR 218. There was no evidence of radiculopathy and Dr. Anderson stated, "there was a paucity of clinical finding objectively, that was commensurate with her symptomatology. AR 218. He found mild wasting of the thenar eminence and mild weakness of the abductor pollicis brevis. AR 218. He diagnosed back strain and carpal tunnel syndrome and opined that plaintiff might reasonably expected to lift twenty pounds occasionally and ten pounds frequently; sit continuously with breaks every two hours; and stand or walk with breaks every two hours. AR 218. He stated that she would have limitations in frequent stooping and crouching and he expected her left hand to fully recover with

return of fine manipulation skills in another one or two months. AR 218. He found no limitations in special senses, pushing, pulling or balancing. AR 218.

On March 11, 1997, a non-examining state agency physician concluded that plaintiff could perform light work that did not require more than occasional climbing, balancing, stooping, crawling, crouching or kneeling. AR 219-226.

On March 18, 1997, she was seen for further follow-up regarding her carpal tunnel release. AR 263. She was doing well with no more preoperative pain. She was discharged and not expected to return unless she had problems in the future. AR 263.

On March 26, 1998, a pulmonary function study suggested a moderately severe obstructive airway disease with a definite response to bronchodilator therapy. AR 228.

In June, 1998, Dan Cox and Dr. Thwaites opined that plaintiff could sit and stand no more than two hours at a time and walk no more than thirty minutes. AR 254. She could sit no more than two hours and stand/walk no more than one hour in an eight hour day. AR 254. She could frequently lift ten pounds and occasionally lift twenty pounds. AR 254. She had no manipulative limitations and could occasionally bend or squat but never crawl or climb. AR 254. She was also moderately limited in her ability to work in an environment with marked temperature or humidity changes. AR 254.

A September 28, 1999 x-ray revealed degenerative disc disease at L4-5 with normal cervical and thoracic spine. AR 315.

In September 2002, Mr. Cox and Dr. Castro opined that plaintiff could occasionally lift and carry twenty pounds; and sit, stand and walk for one hour each in an eight hour day. AR 273-276. These limitations were due to degenerative disc disease, fibromyalgia and mild chronic obstructive pulmonary disease.

On January 6, 2003, Dr. Laurie Weiss performed a psychological consultative examination. AR 317-319. She stated that while plaintiff reported some symptoms of depression and anxiety, her presentation suggested very mild levels of depression and overall her depression did not appear to be interfering with her ability to function. AR 319. Dr. Weiss found no psychiatric impairment and assessed no work related mental limitations. AR 319.

On January 13, 2003, Dr. Suzanne M Stone performed a consultative internal medicine examination. AR 322-324. Her physical examination of plaintiff was normal except for obesity, absent teeth, and small asymptomatic bunions. AR 324. She diagnosed mild lumbar strain with left radiculitis, fibromyalgia by history, controlled hypertension, marked obesity, mild chronic obstructive pulmonary disease and a history of carpal tunnel release with good results. AR 324. Dr. Stone opined that plaintiff could lift and carry twenty pounds frequently and fifty pounds occasionally; and stand/walk for six hours in an eight hour day. AR 324. Dr. Stone imposed no sitting restrictions and mild exertional limitations on climbing, stooping, crouching, crawling, balancing, kneeling, pushing and pulling. AR 324.

On January 26, 2003, Dr. Michael Han performed an orthopedic consultative examination. AR 329-330. Upon examination, Plainitff had full range of motion with some complaints of pain. AR 329. His impression was mechanical low back pain, most likely due to lumbosacral degenerative disc disease. Given her complaints of back pain, he restricted her bending, stooping, kneeling, crouching, crawling and squatting to only intermittently, and lifting and carrying fifty pounds occasionally and twenty-five pounds frequently. AR 330.

ALJ's Findings

The ALJ determined that Plaintiff had degenerative disc disease of the lumbar spine, fibromyalgia, chronic obstructive pulmonary disorder and obesity, which are considered severe impairments, but retained the residual functional capacity ("RFC") to perform a wide range of light work with no more than occasional stooping, crouching, crawling, kneeling, balancing or climbing and avoidance of even moderate exposure to chemicals, dust, fumes, humidity or vibrations. AR 21-22. The ALJ found Plaintiff's subjective complaints of alleged functional limitations not as severe as she asserted. AR 23. Based on the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work as a waitress and bartender as generally performed in the national economy and as plaintiff performed these jobs. AR 23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

---

[3] All references are to the 2003 version of the Code of Federal Regulations unless otherwise noted.

1 disability; (2) has an impairment or a combination of impairments that are considered "severe"
2 (degenerative disc disease of the lumbar spine, fibromyalgia, chronic obstructive pulmonary
3 disorder and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3)
4 does not have an impairment or combination of impairments which meets or equals one of the
5 impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can perform her past
6 relevant work as a waitress and bartender and is therefore not disabled as defined in the Social
7 Security Act.   AR 27-28.

Plaintiff argues that (1) the VE's testimony was erroneous; (2) the ALJ failed to comply
with the Appeals Council remand order; (3) the ALJ failed to comply with due process and
decision writing mandates; (4) the residual functional capacity found by the ALJ is not supported
by substantial evidence; and (5) the ALJ did not properly evaluate the testimony.

## **DISCUSSION**

A.   Vocational Expert Testimony

Plaintiff argues the VE's testimony shows multiple errors or omissions including (1) the VE did not understand his field and was equivocal; (2) the VE changed his mind; and (3) the VE presumed facts which were not in the record and which were untrue.

The Court has reviewed the transcript of the hearing, including the VE's testimony and rejects plaintiff's argument that the VE was equivocal and that he changed his mind.  The references to the record relied on by plaintiff do not support her argument that the VE's testimony was legally erroneous.  In addition, the VE's testimony regarding plaintiff's transferable skills obtained from her past work as a waitress and bartender (taking cash, making change, totaling bills(AR 370)) was not relevant to or related to his ultimate conclusion that plaintiff could perform her past relevant work.  Whether or not she actually performed the skills the VE testified would be "part and parcel to be a bartender" is irrelevant because he found that plaintiff retained the ability to perform her past relevant work and therefore transferable skills were not at issue.

Plaintiff's characterization of the VE's testimony does not change its substance.  The VE testified that plaintiff's past work as a waitress and bartender are described by the Dictionary of

Occupational Titles as light work with an SVP of 3. The ALJ presented the VE with a hypothetical which set out all of the limitations and restrictions he found to be supported by the record. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The VE testified that the hypothetical person could perform plaintiff's past work as a waitress and bartender. The ALJ did not error in relying on this testimony.

B.     The Appeals Council Remand Order

Plaintiff argues the ALJ failed to follow the orders of the Appeals Council remand order in that he rejected the opinions of her treating sources, Drs. Seng, Castro, Payne and Thwaites, without proper analysis.

The medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, Mr. Cox, a physician's assistant, assessed limitations on plaintiff which the ALJ characterized as "extreme" in that they would preclude even sedentary work on a full time basis. AR 22. The assessments provided by Mr. Cox were countersigned by medical doctors who oversaw his work, including Dr. Payne, Dr. Thwaite and Dr. Castro. In rejecting the limitations assessed by Mr. Cox and therefore the listed doctors, the ALJ noted that the limitations were inconsistent with the relatively normal clinical findings in Mr. Cox's treatment records which showed back pain with some limited motion and muscle tenderness. The ALJ also observed that despite the severe limits he placed on plaintiff's ability to work, Mr. Cox provided only very conservative treatment and his treatment records indicate that Vioxx helps control plaintiff's

pain. AR 23. Mr. Cox's opinions were also contradicted by all other opinion evidence of record and inconsistent with plaintiff's reported activities of daily living which were essentially normal.

The ALJ's analysis was not erroneous. The ALJ was not required to adopt Mr. Cox's restrictive opinion of Plaintiff's limitations which is contradicted by that of Dr. Anderson (AR 214-218), Dr. Stone (AR 322-324) and Dr. Han (AR 329-330). He property considered the conservative nature of treatment provided by Mr. Cox and the fact that plaintiff, by her own testimony, performed many activities in her daily living which were inconsistent with Mr. Cox's restrictive view of her abilties. Plaintiff testified that she performed light household chores such as house cleaning, dusting, mopping, vacuuming and cooking and that she walked for exercise. AR 360-362. Moreover, Mr. Cox's assessment of plaintiff is dramatically different from those of Drs. Anderson, Stone and Han. A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e); *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ."). Moreover, a brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ properly rejected the contradicted opinion of Mr. Cox on the basis of clear findings that set out specific, legitimate, reasons. The Court will not disturb this decision.

C.   Due Process

Plaintiff next claims she was denied due process because the ALJ did not respond to Counsel's objection to the consultative examinations; the ALJ did not analyze whether a Listing was met at Step III; the ALJ's analysis at Step II was incomplete; and the case was remanded to the same ALJ that had already found plaintiff "incredible."

   *1.   Cross Examination of the Consultative Examiners*

On March 17, 2003, Plaintiff's counsel sent the ALJ correspondence in which he expressed disagreement with the reports provided by the consultative examiners. Counsel argued

that the reports should be given "no weight whatsoever" or in the alternative he requested the opportunity to cross examine the doctors.

In *Richardson v. Perales*, the Supreme Court determined that a written report by an examining physician may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, may constitute substantial evidence in finding the claimant not disabled. 402 U.S. at 402. At the outset of the analysis, the Court recognized that under the Social Security Regulations, the strict rules of evidence applicable in the courtroom, "are not to operate at social security hearings so as to bar the admission of evidence otherwise pertinent." 402 U.S. at 400. However, the Court allowed the report because it determined that the report was reliable and probative based in part on Plaintiff's ability to subpoena and cross-examine the physician. 402 U.S. at 402-405.

The Court recognizes that, under certain circumstances, a claimant should be permitted to cross-examine the author of submitted evidence. For example, in *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983), the court determined that where a physician is a crucial witness whose findings substantially contradict the other medical testimony, and when interrogatories are an inadequate substitute for cross-examination, the claimant will be denied procedural due process if his request to subpoena the physician is not granted. However, the court recognized that a claimant is not entitled to unlimited cross- examination, but rather "such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). *Id.* at 302; *see also Butera v. Apfel*, 173 F.3d 1049, 1057 (7th Cir. 1999) (observing that cross-examination is not an absolute right in administrative cases). The ALJ has discretion to decide when cross-examination is warranted. *Id.*

Here, the evidence was not so crucial so as to require cross-examination. The ALJ relied more on Dr. Anderson's assessment and the reviewing physician's assessment and indicated that his established residual functional capacity was in the "parameters of the limitations assessed by Dr. Stone and Dr. Hans." AR 22. Indeed, the ALJ assessed greater limitations than those of Drs. Stone and Hans to which Plainitff objects.

The ALJ also did not exclusively rely on the opinion of Dr. Weiss in finding that Plainitff had no severe mental impairment.  Based on the record, he observed that Plainitff had some "intermittent brief complaints of depression" but the record failed to establish that the complaints rose to the level of a medically determinable mental impairment.  AR 21.  While the treating sources occasionally mentioned depression, there were no clinical findings or other documentation of depressive symptoms.  AR 21-22.  The ALJ noted the absence of significance complaints of mental health problems to Mr. Cox and other treating sources and the fact that plaintiff was never referred for mental health treatment.  AR 22.  Nor did her treating sources assess any mental work related limitations.  AR 22.

Because the evidence to which plaintiff objects was not a critical part of the ALJ's decision and merely bolstered evidence already in the record, the ALJ did not abuse his discretion in denying Plaintiff's request to cross examine the consultative examiners.

    2.    *Failure to Meet a Listed Impairment*.

Plaintiff next argues that she was denied due process because the ALJ failed to perform proper analysis at Step III of the sequential evaluation.

After determining that plaintiff has a severe impairment, the ALJ must determine whether any such severe impairment meets any of the impairments listed in the regulations;[4] if so, the claimant is disabled and the analysis ends.[5]  To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a Listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment."  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1526(a), 416.926(a).  Under the law of this circuit, "[i]t is

---

[4]    See 20 C.F.R. Part 404, Subpt. P, App. 1 ("Appendix 1").

[5]    If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. See Marcia v. Sullivan, 900 F.2d 172 (9th Cir. 1990) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)); Key v. Heckler, 754 F.2d 1545, 1548 (9th Cir. 1985).

11

unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

Contrary to plaintiff's argument, the ALJ discussed whether Plaintiff's impairments were severe enough to meet or medically equal one of the impairments listed in the regulations. He stated:

> The medical evidence indicates that claimant has degenerative disc disease of the lumbar spine, fibromyalgia, chronic obstructive pulmonary disorder, and obesity, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The claimant's musculoskeletal impairments have not resulted in motor loss required by the musculoskeletal listings. The claimant's respiratory impairment has not required hospitalization or aggressive emergency treatment at the level described in the listings.

AR 21. Under the law of this circuit, the ALJ's analysis of the Listings at Step III was sufficient.

   3.   *The ALJ's Analysis at Step II*

Plainitff next takes issue with the ALJ's determination at Step II that her carpal tunnel syndrome and depression were not severe.

A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

As discussed above, the ALJ's finding that Plainitff did not have a medically determinable mental impairment was supported by record and proper analysis. His finding relating to Plainitff's carpal tunnel syndrome is also supported. As the ALJ noted, the record shows that within 12 months of significant hand symptoms, she had a carpal tunnel release with good results. She was released from further treatment after her surgery in March 1997 one month after her surgery. AR 21. The ALJ found "no evidence of further significant symptoms of carpal tunnel syndrome after that date." AR 21. The citations to the record listed by Plainitff do not

support her allegation that "there have remained problems ignored by the ALJ." The Court finds no err on the part of the ALJ at Step II of the sequential evaluation.

   *4.    Remand to the Same ALJ*

The Court also rejects Plaintiff's contention that remanding her case to the same ALJ was improper. ALJ's and other similar quasi-judicial administrative officers are presumed to be unbiased. *Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Id.* The burden of making such a showing rests with the party asserting bias. *Id.* at 196, 102 S.Ct. 1665. Since Plaintiff has failed to present any evidence that the ALJ was biased, she has obviously failed to meet this burden.

D.   Residual Functional Capacity

Plainitff next disagrees with the ALJ's analysis regarding her RFC and argues that he ignored restrictions caused by her chronic obstructive pulmonary disease and fibromyalgia.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I).

Here, the ALJ found that plaintiff had the RFC to perform a wide range of light work with no more than occasional stooping, crouching, crawling, kneeling, balancing, or climbing and she must avoid even moderate exposure to chemicals, dust, fumes, humidity or vibrations. AR 22.

The ALJ obviously considered Plainitff's chronic obstructive pulmonary disease in limiting her exposure to chemicals, dust, fumes, humidity or vibrations. Plainitff's argument to the contrary is therefore rejected.

1    The ALJ also considered the limitations cased by her fibromyalgia.  As discussed, the
ALJ properly rejected the restrictive opinions of the treating sources in favor of the less
restrictive opinion of Dr. Anderson.  The ALJ may properly reject the opinion of treating
physicians, where, as here, the opinions are contradicted by other sources and the ALJ provides
specific reasons for doing so.  The Court cannot weigh the evidence or resolve conflicts therein,
that responsibility belongs to the Commissioner alone.  *Richardson v.  Perales*, 402 U.S. 389,
399 (1971).  The ALJ's RFC is supported by substantial evidence in the record and was not
based on legal error and therefore must be upheld by the Court.

E.    Plaintiff's Testimony

Next, Plaintiff argues that the ALJ failed to properly evaluate her testimony and failed to include any true rationale for rejecting her testimony.  Plaintiff therefore argues that the ALJ had "pre-determined" this issue before the hearing.  As with her claim of bias, the Court rejects this argument.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ's findings were sufficiently specific to permit the Court to conclude that he ALJ did not arbitrarily discredit claimant's testimony. The ALJ stated:

> The claimant has also alleged severe limitations in sitting, walking, and lifting. However, her complaints are not credible for the following reasons. As shown above in the assessment of Mr. Cox opinion, the clinical findings in this case are minimal and do not denote more than mechanical back pain and some intermittent breathing problems generally controlled with medication. The claimant's course of treatment has been quite stable and very conservative. Her medications have helped control her symptoms. A course of physical therapy was also successful in improving functioning. Moreover, the claimant lives alone and is able to perform her own household chores, cook, do laundry, shop, drive and run errands as need (Exhibits 3E, 4E, 5E, 10F). The record as a whole supports a conclusion that the claimant can perform light work as described above.

AR 23. The ALJ's credibility findings provided the required specificity and he considered the appropriate factors. The ALJ evaluated the record as a whole and his credibility analysis was not just limited to the lack of clinical findings. He noted plaintiff's self sufficiency and the positive effect of her medications. *See Fair v. Bowen*, 885 F.2d at 597 ("If, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). He also considered the conservative level of care given by her doctors. While plaintiff complaint of the brevity of his discussion, the Court finds no basis to disturb his findings. The ALJ gave specific and proper findings to permit this Court to conclude that he did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

///
///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Toni Fallon.

IT IS SO ORDERED.

Dated:   **September 26, 2005**                    **/s/ Dennis L. Beck**
3b142a                                              UNITED STATES MAGISTRATE JUDGE